UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAUGHNESSY, KNIEP, HAWE ) <br> PAPER COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FETTERGROUP d/b/a FETTER ) <br> PRINTING COMPANY and ) <br> JOHN J. ROOS, ) <br> ) <br> Defendants. ) | Case No. 4:14-CV-00233-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Fetter Printing Company and John Roos' Motion to Dismiss (Doc. 10). The motion is fully briefed and ready for disposition. For the following reasons, the motion will be **GRANTED in part**.

### I. Motion to Dismiss Standard of Review

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

1

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Huang v. Gateway Hotel Holdings*, 520 F.Supp.2d 1137, 1140 (E.D. Mo. 2007).

## II. Background

Plaintiff Shaughnessy, Kniep, Hawe Paper Company ("Shaughnessy") prints and distributes various paper products (Doc. 1 at ¶9). Defendant Fetter Printing Company ("Fetter"), one of Plaintiff's former clients, sells printed labels to companies in the painting and coating industry (*Id.* at ¶¶10, 11). Defendant John J. Roos ("Roos") is Fetter's Chief Financial Officer (*Id.* at ¶14).

Beginning in April 2005 and continuing for more than eight (8) years, Shaughnessy provided Fetter with specially manufactured paper (the "Custom Paper")[1] (*Id.* at ¶11). On April 15, 2005, Fetter executed a credit application (the "Credit Application") and delivered it to Shaughnessy (*Id.* at ¶12). In relevant part, the Credit Application reads as follows:

> In consideration of the extension of credit by [Shaughnessy] to [Fetter], [Fetter] agrees to promptly pay all bills in accordance with the terms expressed on the invoice. [Fetter] agrees that [Shaughnessy] shall retain a purchase money security interest in all goods and services purchased by us until payment in full has been received by [Shaughnessy]. [Fetter] further agrees that if the goods and services ordered by [Fetter] or any other designated person shall remain unpaid past the invoice due date, any balance so remaining unpaid shall bear interest at the lesser of the rate of $1^{3/4}\%$ per month or the maximum rate permitted by applicable law, until paid. In the event that any suit or action is instated to collect amount due on our account, whether principle [sic] interest or both, [Fetter] agrees to pay, in

---

[1] Shaughnessy alleges that the Custom Paper was specially manufactured for Shaughnessy because Fetter required the Custom Paper to be manufactured in a unique size, using coated one-side paper, "among other characteristics." *Id.* at ¶13.

2

addition to the amount owed, all legal fees and collection agency fees incurred, including a reasonable sum for attorney's fees.

(*Id.*). In the course of their regular dealings, every Monday Shaughnessy would send Roos a document titled "Fetter Customer Held" (the "Inventory Statement") that was a then-current listing of the Custom Paper that Shaughnessy was holding for Fetter's purchase (*Id.* at ¶¶14, 15). Based on this Document, Roos would then place an order of the Custom Paper (*Id.* at ¶16). Monthly, a representative of Shaughnessy would meet with Roos to review the current Inventory Statement and request Shaughnessy purchase additional Custom Paper (*Id.* at ¶¶17-19). Based on these representations, Shaughnessy would order the Custom Paper (*Id.* at ¶20). Given the levels of Custom Paper requested by Fetter, Shaughnessy was required to procure Custom Paper with a twelve-week lead time (*Id.* at ¶21).

In January 2013, Roos notified Shaughnessy that Fetter had reached an agreement with Fort Dearborn Company ("Fort Dearborn") whereby the paint label segment of Fetter's business would be sold to Fort Dearborn (*Id.* at ¶23). During this conversation, Roos informed Shaughnessy that Fetter would continue to perform under the established course of dealing until the sale of Fetter's business to Fort Dearborn was complete (*Id.* at ¶25) (hereinafter the "First Representation"). Roos also told Shaughnessy that Fetter and Fort Dearborn had agreed that, upon the sale of Fetter's printing business, the remaining Custom Paper inventory held by Shaughnessy would be purchased by Fort Dearborn (*Id.* at ¶26) (hereinafter the "Second Representation"). Beginning on March 4, 2013, Shaughnessy included Fort Dearborn's Procurement Director on the distribution list for the Inventory Statements (*Id.* at ¶27).

3

In or about June of 2013, Fetter notified Shaughnessy that it would no longer purchase the Custom Paper from Shaughnessy (*Id.* at ¶28). Further, Fetter told Shaughnessy that Fort Dearborn would not be purchasing the remaining Custom Paper inventory (*Id.* at ¶29). At the time of this conversation, the dollar value of Shaughnessy's Custom Paper inventory totaled $371,426.12 (*Id.* at ¶30). In support of this statement, Shaughnessy provides an inventory statement as an attachment to the complaint (Doc. 1-1).

On February 2, 2014, Shaughnessy filed this action alleging Breach of Contract against Fetter (Count I) and Negligent Misrepresentation against Fetter and Roos (Count II). Shaughnessy alleges that the course of dealing together with the credit application, Inventory Statements and other writings, constitute an enforceable contract for the sale of specially manufactured goods (*Id.* at 22). Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) because (1) Fetter was not legally obligated to purchase the inventory in question and (2) Shaughnessy's complaint does not state a claim for negligent misrepresentation.

### III. Analysis

#### A. Count I: Breach of Contract

Defendants assert that the written Credit Application controls the relationship because, under Missouri law, a course of dealing cannot be interpreted to contradict a written agreement. The Credit Application provides that Fetter is only required to pay for the inventory it actually orders. In the alternative, Defendants argue that the course of dealing in this case also only obligated Fetter to purchase goods from Shaughnessy after

4

placing an order. Therefore, because Shaughnessy has not alleged that Fetter ordered the inventory at issue, Defendants argue that the Court should dismiss this claim.

Plaintiff responds asserting that Defendants argument for dismissal of Plaintiff's complaint pursuant to Rule 12(b)(6) relies on deliberate misinterpretations and omissions of several material facts pled by Plaintiff. Specifically, Plaintiff argues that the Credit Application alone does not govern the Parties' relationship. Instead, pointing to the language from its Complaint, Plaintiff states that "the Credit Application, together with the course of dealing . . ., the Inventory Statements, and other writings, constitutes a contract for the sale of specially manufactured goods" (Doc. 13 at 5). Plaintiff also argues, in response to Fetter's claim that Plaintiff has failed to plead that Fetter ordered the Custom Paper inventory at issue, that Fetter's monthly request that Shaughnessy increase its Custom Paper inventory by specific quantities is a vital component of the routine course of dealing.

For the purposes of this motion, the Parties have agreed that Missouri Law applies to this claim (Doc. 10-1 at 5). Under Missouri law, a breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 104 (Mo. 2010). "A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." MO. REV. STAT. § 400.2-204 (2014). *See also Davidson & Associates, Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d

5

1164, 1177 (E.D. Mo. 2004). One such manner is through a "course of dealing," defined as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." MO. REV. STAT. § 400.1-205(1). "The express terms of an agreement and an applicable course of dealing . . . shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control . . . ." MO. REV. STAT. § 400.1-205(4).

The Court finds that Plaintiff has sufficiently alleged a breach of contract claim. On the face of the complaint, the alleged course of dealing does not appear inconsistent with the terms of the Credit Agreement. Specifically, while the Credit Agreement includes a provision regarding "goods and services ordered by [Fetter]," a reasonable inference in the light most favorable to Shaughnessy is that Fetter "ordered" goods when it made its monthly request for Shaughnessy to increase its Custom Paper inventory by specific quantities (Doc. 1 at ¶12). If this is the case, then Fetter would be obligated under the Credit Application to pay for the goods. While all of the nuances of this relationship are not now before the Court, the issue is whether Plaintiff has sufficiently stated a breach of contract claim and the Court finds that Plaintiff has met this burden.

### B. Count II: Negligent Misrepresentation

Defendants also assert that Plaintiff fails to state a claim for negligent misrepresentation. A negligent misrepresentation claim consists of the following six elements:

(1) the speaker supplied information in the course of his or her business because of some pecuniary interest, (2) that was false, (3) without exercising reasonable care of

6

competence in obtaining or communicating this information, (4) for the guidance of a limited group of persons in a particular business transaction, (5) and the listener justifiably relied on the information, (6) and, as a result, suffered a pecuniary loss.

*Collins v. Mo. Bar Plan*, 157 S.W.3d 726 (Mo. Ct. App. 2005). In other words, to maintain a claim for negligent misrepresentation, Plaintiff must establish that due to a failure to exercise reasonable care, Defendants made false statements that Plaintiff justifiably relied upon to his detriment. *Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1023 (8th Cir. 2006).

In its complaint, Plaintiff alleges that Fetter's representations, the First Representation and the Second Representation, to Shaughnessy in January 2013 were negligent and based upon Fetter's failure to exercise reasonable care (Doc. 1 at ¶40). Plaintiff further alleges that it justifiably relied on and was damaged by these representations when it continued to perform under the Contract between the Parties and purchased materials at Fetter's request (*Id.* at ¶¶44, 45).

Defendants first assert that Fetter's failure to purchase Shaughnessy's inventory cannot give rise to an independent claim of negligent misrepresentation when the same facts are already pled within Plaintiff's breach of contract claim. Plaintiff responds that the facts and circumstances of the negligent misrepresentation claim, and more specifically, the First Representation, are sufficiently distinct to support a separate claim for negligent misrepresentation. Specifically, Plaintiff asserts that "[t]he First Representation was made to Plaintiff in contemplation of Fetter selling the very segment of its business that used the Custom Paper that Shaughnessy provided solely to Fetter" (Doc. 13 at 9).

7

"The mere failure to perform a contract cannot serve as a basis of tort liability unless the breach itself is an independent tort." *Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 290 (Mo. Ct. App. 2008). *See also Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). "Attaching additional tort liability to a breach of contract claim is only allowed when an independent tort has been committed against the plaintiff" and "[t]he independent tort alleged cannot be dependent on the elements of the contract claim." *Hullverson Law Firm, P.C. v. Liberty Ins. Underwriters, Inc.*, No. 4:12-CV-1994 CAS, 2013 WL 3802517, at *1 (E.D. Mo. July 22, 2013).

The Court finds that Plaintiff cannot bring a separate negligent misrepresentation claim that relies on the First Representation. In this case, Plaintiff has stated a claim for negligent misrepresentation that rests almost wholly on Fetter's refusal to pay for the invoiced Custom Paper. While the negligent misrepresentation claim does include the additional facts regarding the specific representations made by Roos on behalf of Fetter, the First Representation is merely a reassurance that Fetter would continue performing under the alleged contract. Therefore the allegations do not rise to the level of identifying a separate tort claim as required by Missouri law.

As for the Second Representation, Defendants' assert that Fort Dearborn's decision to purchase or not to purchase Shaughnessy's remaining paper was outside of Fetter's control (Doc. 14 at 6). Plaintiff responds that although the Second Representation related to the future actions of Fort Dearborn, it constitutes a statement of Defendants' present intention and concerns matters within Defendants' control. Plaintiff argues that Defendants represented to Plaintiff that it would be paid for the remaining

8

Custom Paper because Defendants had established an agreement with Fort Dearborn whereby Fort Dearborn would purchase the remaining Custom Paper. Plaintiff further asserts that the agreement was apparent to Shaughnessy because following the Second Representation Fort Dearborn's Procurement Director was included on the distribution lists for the Inventory Statements (Doc. 13 at 8).

In Missouri,

> A claim for negligent misrepresentation generally cannot be based on unfulfilled promises or statements as to future events, unless the statement is a representation of the speaker's present intention or concerns matters within the speaker's control. The representation is not actionable if it regards the future actions of an independent third party. If the third party is independent, the third party would not be under the control of the speaker, so the speaker would not be liable for any misrepresentations.

*Ryann Spencer*, 275 S.W.3d at 291. Even in the light most favorable to the Plaintiff, the alleged facts cannot be reasonably interpreted to afford Fetter control over the actions of Fort Dearborn. While Fetter and Fort Dearborn may have entered into an agreement whereby Fort Dearborn would purchase the remaining Custom Paper, there is no suggestion that Roos was an agent of Fort Dearborn or had any authority to bind it to the dealings with Shaughnessy. Furthermore, a party is not justified in relying on representations involving the future actions of an independent third party. *Ryan Spencer*, 275 S.W.3d at 290.

Therefore the Court finds that Plaintiff's negligent misrepresentation claim (Count II) cannot survive Defendants' motion to dismiss.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Fetter Printing Company and John Roos' Motion to Dismiss (Doc. 10) is **GRANTED in part.** Plaintiff's negligent misrepresentation claim (Count II) is **DISMISSED with prejudice.**

Dated this 30th day of March, 2015.

*/s/ John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE